25CA1362 Marriage of Kronbach 08-13-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1362
Douglas County District Court No. 17DR30352
Honorable Daniel Warhola, Judge

In re the Marriage of

Jennifer L. Kronbach,

Appellant,

and

David W. Kronbach,

Appellee.

ORDER AFFIRMED

Division III
Opinion by JUDGE KUHN
Freyre and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

Springer and Steinberg, P.C., Jeffrey A. Springer, Michael P. Zwiebel, Denver, Colorado, for Appellant

Fuller & Ahern, P.C., Brian M. Close, Parker, Colorado, for Appellee

¶ 1    Petitioner, Jennifer L. Kronbach (wife), appeals the district court's order affirming a magistrate's conclusion that respondent, David W. Kronbach (husband), no longer has to pay her maintenance under a separation agreement. We affirm.

## I.    Background

¶ 2    In March 2018, the court dissolved the parties' marriage, and it incorporated their separation agreement into the decree of dissolution. The separation agreement required husband to pay wife $8,000 per month in maintenance for a period of eight years and nine months. The agreement stated that maintenance was "contractual and non-modifiable."

¶ 3    In September 2023, wife remarried and husband stopped making maintenance payments. Then, in September 2024, wife filed a motion for a declaratory judgment, arguing that maintenance under the separation agreement was nonmodifiable and didn't terminate when she remarried. Husband responded that maintenance terminated when she remarried under section 14-10-122(2)(a)(III), C.R.S. 2025.

¶ 4    A magistrate ultimately ruled that husband's maintenance obligation terminated when wife remarried. In her order, the

magistrate applied *In re Marriage of Cerrone*, 2021 COA 116, and explained that "the language 'maintenance shall be contractual and non-modifiable' alone is not sufficient to overcome the automatic statutory termination of maintenance upon remarriage of the party receiving maintenance."

¶ 5     Wife then filed a petition for review of the magistrate's order.  A district court judge affirmed the magistrate's order, concluding that the maintenance clause didn't show the parties' intent to continue maintenance payments after wife remarried, so husband's maintenance obligations terminated by operation of law when she remarried.  Wife now appeals the district court's order.

## II.    Analysis

¶ 6     Wife contends that the district court erred when it ruled that husband's maintenance obligations terminated when she remarried.[1]  Both parties also seek their attorney fees and costs.  We address each issue in turn.

---

[1] Though the parties don't argue waiver on appeal, it is worth noting that in a verified motion seeking modification of child support in the trial court, wife conceded that she had "remarried and pursuant to [section 14-10-122(2)(a)(III), C.R.S. 2025], [her] maintenance of $8000 per month ha[d] terminated."  This fact, however, doesn't change our analysis in this case.

## A. Applicable Law and Standard of Review

¶ 7 Section 14-10-122(2)(a)(III) states that "[u]nless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon . . . [t]he remarriage of . . . the party receiving maintenance."

¶ 8 We review a district court's order adopting a magistrate's order as "a second layer of appellate review, and, like the district court, we must accept the magistrate's factual findings unless they are clearly erroneous." *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22; *see* C.R.M. 7(j). However, we review de novo the district court's conclusions on issues of law. *See Sheehan*, ¶ 22. Likewise, we review de novo questions of contract and statutory interpretation. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009); *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 5.

¶ 9 In interpreting contracts or statutes, our objective is to effectuate the intent of the parties or the General Assembly, respectively. *Copper Mountain*, 208 P.3d at 697; *Goodman*, ¶ 7. To do so, we look first to the plain language of the contract or the statute. *Goodman*, ¶ 7.

## B. The Agreement Does Not Reflect the Parties' Intent to Continue Maintenance After Wife Remarried

¶ 10 Wife contends that the court erred by adopting *Cerrone*'s reasoning in its order. Specifically, wife argues that (1) *Cerrone* was wrongly decided; (2) *Cerrone*'s holding was dicta; and (3) *Cerrone*'s holding was "inconsistent both with [the] fundamental rules for construing contracts and the weight of authority both before and since." Based on all of this, wife contends that (4) the court erred by concluding that the language of the separation agreement was insufficient to justify continued maintenance.

### 1. *Cerrone* Doesn't Require Talismanic Language

¶ 11 First, wife argues that *Cerrone* was wrongly decided because the division in that case "arrived at an inflexible rule that requires parties to specifically mention remarriage in order to overcome the statutory presumption." We disagree with wife's reading of *Cerrone*.

¶ 12 The facts in *Cerrone* are like the ones here: The court was asked to determine whether maintenance payments terminated upon wife's remarriage. *See Cerrone*, ¶ 20. The maintenance clause at issue in *Cerrone* stated that maintenance was "contractual in nature and shall be non-modifiable for any reason whatsoever by

the Court." Ultimately, the division in *Cerrone* held that the language of the maintenance clause was insufficient to overcome the statutory presumption of termination. The court also noted that "to avoid termination of maintenance by operation of law under section 14-10-122(2)(a)(III), a separation agreement or decree must include an 'express provision' that maintenance will continue even if the recipient spouse remarries." *Cerrone*, ¶ 20 (citation omitted).

¶ 13    But nowhere in *Cerrone* did the division state that the word "remarriage" was required to overcome the statutory presumption. To the contrary, the *Cerrone* division explained that "the language of the separation agreement must be read as a whole, and in context, to determine the meaning of [the agreement]." *Id.* at ¶ 19.

¶ 14    This point is further illustrated by the *Cerrone* division's analysis. The division cited *In re Marriage of Hahn* as a case in which a separation agreement overcame the statutory presumption of maintenance termination upon remarriage. 628 P.2d 175 (Colo. App. 1981). The maintenance clause in *Hahn* stated that "payments will not be subject to modification *for any reason* except the death of the wife." *Id.* at 176 (emphasis added). The division in *Hahn* held that although termination in the event of marriage

5

wasn't explicitly stated, the maintenance provision indicated that "it was the contemplation of the parties that only the wife's death would absolve the husband of liability for payment of maintenance." *Id.* The *Cerrone* division, in turn, noted that this language satisfied the test because it "provided that *only* one identified event would serve as a basis for modifying maintenance." *Cerrone*, ¶ 18. Therefore, we reject the notion that *Cerrone* required the talismanic invocation of the word "remarriage" — or indeed any other talismanic language — to overcome the statutory presumption.

## 2. *Cerrone*'s Holding and Dicta

Second, wife argues that *Cerrone* is an anomaly and its holding "is dicta and has no precedential value" because "the court opined on a matter not before it." In evaluating the language in *Cerrone*, the magistrate had also relied on *In re Marriage of Parsons*, 30 P.3d 868 (Colo. App. 2001). There, the division concluded, "In short, the presence of a nonmodification clause is sufficient to overcome the statutory presumption that maintenance terminates upon the recipient's remarriage." 30 P.3d at 869. In *Cerrone*, one of the parties argued that *Parsons* was wrongly decided. The division noted that it "decline[d] to follow *Parsons* to the extent [that

6

case] holds that the mere presence of a nonmodification clause is, on its own, sufficient under section 14-10-122(2)(a)(III) to continue a maintenance obligation after a recipient spouse's remarriage." *Cerrone*, ¶ 8.

¶ 16    Wife relies on *People in Interest of T.M.*, 742 P.2d 905 (Colo. 1987), for the proposition that *Cerrone*'s holding on this point was dicta because it "was not before the court." *Id.* at 911 n.5 (citation omitted). But that's not correct. The issue was raised by the parties and was necessary to the court's resolution of the dispute. However, even if that weren't the case, it wouldn't control our resolution of this matter. We "are not bound by the decisions of other divisions." *Chavez v. Chavez*, 2020 COA 70, ¶ 13. Thus, regardless of whether it was a holding or dicta, we can rely on the analysis in *Cerrone* to the extent that we find it persuasive. *See Chavez*, ¶ 13.

### 3.    *Cerrone*'s Holding is Consistent with Contract Interpretation Rules and Case Law

¶ 17    Third, wife argues that *Cerrone*'s holding is inconsistent with the fundamental rules of contract interpretation and "the weight of authority both before and since." We disagree.

7

¶ 18     It is true that the case law surrounding section

14-10-122(2)(a)(III) and what language satisfies the requirement

that the parties must "agree[] in writing or expressly provide[] in the

decree" has been somewhat in flux.  *See In re Marriage of Clark*,

2025 COA 75, ¶ 35 (Sullivan, J., specially concurring)

("underscore[ing] the unusually muddy state of our court's

precedent on this issue") (*cert. granted* May 18, 2026).  Nonetheless,

none of these cases are at odds with the controlling principles that

guide how we interpret the parties' agreement.

¶ 19     Indeed, the case law on this topic ultimately converges around

the "cardinal rule that an agreement . . . must be construed as a

whole and effect given, if possible, to its every provision."  *Brown v.

Brown*, 419 P.2d 444, 445 (Colo. 1966).  Each of the primary cases

wife cites in support of her argument relies on this guiding

principle.  *See Parsons*, 30 P.3d at 869 ("While express language

concerning termination is preferable, the absence of that language

is not fatal if the intent is evident from the agreement or decree as a

whole."); *Cerrone*, ¶ 19 ("[T]he language of the separation agreement

must be read as a whole, and in context, to determine the meaning

of those terms or any others."); *Clark*, ¶ 14 ("[W]e evaluate the

contract as a whole and seek to 'give effect to all provisions so that none will be rendered meaningless.'" (quoting *Gagne v. Gagne*, 2014 COA 127, ¶ 53)).  We therefore apply this contract interpretation principle as our primary tool in evaluating the agreement in this case.

### 4.    The Court Did Not Err in Its Interpretation

¶ 20    Fourth, based on all of the above, wife contends that the court erred by concluding that the separation agreement's language was insufficient to justify continued maintenance.  Reviewing the agreement de novo, *see Copper Mountain*, 208 P.3d at 696, we must thus determine whether the parties "agreed in writing" for maintenance to continue after wife remarried, § 14-10-122(2)(a)(III).

¶ 21    The modification clause in this case states that "[m]aintenance shall be contractual and non-modifiable."  Wife first cites *Parsons* and argues that, in accordance with that case, "the presence of a non-modification clause is sufficient to overcome the statutory presumption that maintenance terminates upon the recipient's remarriage."  30 P.3d at 869.  But as the division did in *Cerrone*, we decline to follow *Parsons* to the extent that it holds that *any* nonmodification clause is sufficient to overcome the statutory

9

presumption.  *Cerrone,* ¶ 20.  As we note above, instead we evaluate the agreement as a whole to determine the expressed intent of the parties.  *See Clark,* ¶ 14.

¶ 22    Turning to the language itself, the agreement doesn't explicitly indicate what happens to maintenance if one of the parties remarries.  The agreement indicates that it cannot be *modified,* but it is silent on whether it can be terminated *by operation of law* under the remarriage provisions of the statute.  However, as the district court noted, the parties included in the maintenance clause that "[h]usband shall secure his spousal maintenance obligation with a life insurance policy naming [w]ife as beneficiary."  The agreement further noted that "[h]usband may adjust the death benefit payable to [w]ife every year based upon the reduction in his total outstanding maintenance obligation."

¶ 23    Based on this language, then, the parties accounted for one circumstance under which maintenance would otherwise terminate by operation of law.  *See* § 14-10-122(2)(a)(I) (terminating maintenance upon the death of either party unless the parties otherwise agreed in writing).  It is true that the parties didn't agree that maintenance would *continue* upon husband's death, but they

did agree that wife would get compensated for maintenance — the remaining value of the insurance policy — upon that event. Regardless, while the parties agreed that they would use life insurance to ensure wife received the remaining value of the maintenance if husband died, they made no such accommodation in the event that one of them remarried.

¶ 24     These circumstances are effectively the inverse of those in *Hahn*. In that case, the maintenance clause indicated that maintenance was not to be terminated "for any reason except the death of the wife." 628 P.2d at 176. The division in that case concluded that the quoted language represented the parties' agreement that the maintenance would continue in the event of remarriage. But here, the *only* circumstance the parties' agreement addressed was husband's death. If, as wife argues, the nonmodification clause indicated the parties agreed that section 14-10-122(2)(a) didn't apply, then the life insurance clause would be — at least to some extent — superfluous. And when interpreting a contract, we must choose an interpretation that harmonizes its provisions rather than rendering any of them superfluous. *See Copper Mountain, Inc.*, 208 P.3d at 700. Other than ensuring that

11

wife would receive the value of remaining maintenance payments after husband's death, we see nothing within the separation agreement that addresses circumstances that would trigger a statutory termination of maintenance.

¶ 25 Nor are we persuaded that the language that "[m]aintenance shall be contractual and non-modifiable" is sufficient under the other cases wife cites. The separation agreement in *Parsons* stated that maintenance was "*contractual in nature and non-modifiable* by any court. The payment of maintenance to [wife] *shall not be subject to increase, or decrease, or extension* due to change of economic circumstances of either party or for any other reason." *Parsons*, 30 P.3d at 868 (alteration in original). The court held that maintenance payments were to continue after wife's remarriage because payments were nonmodifiable as to the amount and duration." This language distinguishes *Parsons* from the case at hand. Besides stating that maintenance couldn't be modified by the court, the agreement in *Parsons* specified that the amount could not change *for any reason*, including by operation of law.

¶ 26 Likewise, the separation agreement in *Clark* required husband to pay wife maintenance payments for over seventy-two months and

specified that the "[a]greement is set and may not be modified or terminated." *Clark*, ¶ 2. The court ultimately held that because the parties agreed that maintenance payments could not be modified *or* terminated, they overcame the statutory presumption of termination. *Id.* at ¶ 3.

¶ 27 Evaluating the agreement in this case as a whole, as we must, we simply see no indication that the parties "agreed in writing," § 14-10-122(2)(a), that maintenance would continue after wife's remarriage. To the extent the parties made any agreement in writing addressing the circumstances in section 14-10-122(2)(a) — the death of husband — that agreement only undercuts wife's argument on remarriage.

¶ 28 Accordingly, we perceive no error in the district court's interpretation of the separation agreement. We conclude that the parties did not agree in writing that maintenance would continue upon a party's remarriage. Therefore, under section 14-10-122(2)(a)(III), husband's obligation to pay wife maintenance terminated when she remarried.

## C. Attorney Fees

¶ 29 Wife also contends that she is entitled to attorney fees and costs, under the agreement's indemnification clause. She argues that husband failed to comply with his obligation to pay maintenance, so wife incurred fees and costs "in order to rectify this breach." Husband argues that wife is not entitled to fees and costs, and "if any party is awarded fees, [h]usband should be awarded trial court and appellate fees pursuant to the indemnification clause and C.A.R. [39.1]." We decline to award fees to either party.

¶ 30 The indemnification clause in the separation agreement provides that the "parties shall each indemnify and hold harmless the other party against any loss, fine or expense incurred through the failure of one of them to comply with or perform any of the terms of this [s]eparation [a]greement."

¶ 31 As we conclude above, husband's obligation to pay maintenance terminated by operation of law under section 14-10-122(2)(a)(III) when wife remarried. Because husband had no legal obligation to pay wife maintenance after she remarried, husband didn't violate the separation agreement by failing to make payments. *See Acad. of Charter Schs. v. Adams Cnty. Sch. Dist. No.*

14

*12*, 32 P.3d 456, 463 (Colo. 2001) ("A contract[, or obligation under a contract,] is void . . . when it produces no legal obligation upon the part of a promisor." (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts* 18 (3d ed. 1987))).  Accordingly, because husband was not legally obligated to pay maintenance, he didn't breach the agreement, and wife is not entitled to attorney fees and costs under the indemnification clause.

¶ 32    Husband also argues that he is entitled to attorney fees under the indemnification clause.  However, husband doesn't explain why he is entitled to fees under this clause or even how he incurred expenses due to wife's failure to comply with the agreement.  We therefore decline to address this underdeveloped argument further. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address "underdeveloped arguments").

¶ 33    Finally, husband argues that he is entitled to attorney fees under Rule 39.1.  A party claiming attorney fees under Rule 39.1 "must include a specific request, under a separate heading, and must explain the legal and factual basis for an award of attorney fees."  Not only did husband fail to make his request under a separate heading in his brief, he also didn't explain the legal and

15

factual basis for why he is entitled to fees.  We therefore also deny

husband's request for fees under Rule 39.1.

### III.   Disposition

¶ 34     The order is affirmed.

JUDGE FREYRE and JUDGE JOHNSON concur.